**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF NEW YORK**

**MEGAN S.**

|   |   |   |
|---|---|---|
| | **Plaintiff,** | **25-CV-00253-HKS** |
| **v.** | | |

**COMMISSIONER OF SOCIAL SECURITY,**

                    **Defendant.**

---

## DECISION AND ORDER

As set forth in the Standing Order of the Court regarding Social Security Cases subject to the May 21, 2018 Memorandum of Understanding, the parties have consented to the assignment of this case to the undersigned to conduct all proceedings, including the entry of final judgment, as set forth in 42 U.S.C. § 405(g).

## BACKGROUND[1]

On June 3, 2022, plaintiff, at the age of 41, protectively filed claims for benefits under Titles II and XVI of the Social Security Act, alleging an onset date of March 1, 2021. Dkt. #5, pp. 402-403.

In a Disability Report filed on June 10, 2022, plaintiff alleged she was disabled due to PTSD, anxiety/panic disorder, depression, migraines, trigeminal neuralgia, and back problems. Dkt. #5, p. 436.

---

[1] Record citations use the page number(s) generated by the Court's electronic filing system.

~ 1 ~

Plaintiff's claim was denied initially and on reconsideration. Dkt. #5, pp. 234-235, 273-274. Plaintiff requested a hearing, and a telephonic hearing before Administrative Law Judge ("ALJ") John Benson was held on November 28, 2023. Dkt. #5, pp. 200-224. Plaintiff appeared with counsel. *Id.*

Upon examination by the ALJ, plaintiff testified that she worked for approximately fifteen years as a senior social worker examiner for Erie County assisting individuals with food stamps, cash assistance, Medicaid, and daycare programs. Dkt. #5, p. 209-210. She mostly sat at a desk interviewing clients and would sometimes cover the reception area as well. *Id.* She did not have to do any lifting in that job. Dkt. #5, p. 210. She resigned from her job due to medical reasons. *Id.*

Next, plaintiff testified that she lives in an apartment with her seven-year-old daughter. *Id.* No one else lives there. *Id.* Her daughter does not have disabilities or special needs. Dkt. #5, p. 211.

The ALJ asked plaintiff to describe an average day, and plaintiff stated that she gets up and drives her daughter to school about five minutes away, then returns home and does not do a lot until time to pick up her daughter. *Id.*

Plaintiff testified that otherwise she does not drive a lot, other than for doctors' appointments. *Id.* She uses Instacart to order groceries to be delivered and uses stores that have curbside pickup. *Id.*

The ALJ then asked plaintiff why she felt that she was unable to work, and plaintiff stated that she has lots of panic attacks in social settings, as well as a history of migraines going back twenty years. *Id.* She used to miss a lot of work due to migraines, and she also had back surgery so she is limited in the type of physical jobs she can do. Dkt. #5, pp. 211-212.

Upon examination by her counsel, plaintiff testified that she has between 10 and 15 headaches a month, with each lasting two days on average. Dkt. #5, p. 212. During headaches, she needs to be in a dark room without a lot of noise or light. *Id.* She has medication which, if she takes it when the headache begins, helps it to go away. *Id.* She gets massages regularly to help keep the headaches at bay because many are tension related. *Id.*

Plaintiff testified that she also has very bad temporomandibular joint disorder ("TMJ"), which causes her to clench her jaw and induces headaches. *Id.* Over the years, she has tried acupuncture, chiropractic treatment, medicines, and physical therapy, but massage works the best. Dkt. #5, pp. 212-213. She also receives Botox injections which help with the clenching in her jaw. Dkt. #5, p. 213.

Plaintiff's counsel asked her how long her headaches last if she takes her medication when they begin, and she said they can go away within a couple of hours rather than lasting a few days. Dkt. #5, pp. 213-214. She noted that the medication makes

her drowsy or "dopey," but she is able to function, such as being able to help her daughter with her homework. Dkt. #5, p. 214.

Next, plaintiff's counsel asked her about the panic attacks she experiences. *Id.* Plaintiff testified that, when she was at work, noises such as typing and telephones would all blend together, and the overstimulation would cause her hands and face to go numb, and she would start sweating and have heart palpitations. *Id.* She said the only thing she could do was to leave. Dkt. #5, pp. 214-215.

Plaintiff further testified that if she took Xanax, the panic attack would decrease in about an hour, but she would still feel anxious. Dkt. #5, p. 215. She also stated that she had not had a panic attack within a month or so because she tries to avoid places where they occur. *Id.* Things that trigger her are people, and if she has to go to grocery stores she goes when there are not likely to be many people there. *Id.* She also cannot handle traffic. *Id.*

Plaintiff's counsel asked her if she was able to keep working or functioning after taking Xanax. She stated that at work when she would take her Xanax, she would not function the way she should and be organized. Dkt. #5, p. 216.

Plaintiff testified that she also has ADHD, which makes it difficult to carry out functions the way they are planned, and this made it hard for her to manage her heavy

~ 4 ~

caseload in her job. Dkt. #5, p. 217. It also affects how she does chores and tasks at home. *Id.*

Plaintiff also testified that she had an episode of vertigo the prior year, and she was treated by her therapist. Dkt. #5, p. 218. She has not had another episode. *Id.*

The ALJ then heard testimony from James Sarno, a vocational expert ("VE"). The VE testified that plaintiff's past job with Erie County is classified in the Dictionary of Occupational Titles ("DOT") as social service work, a job with a sedentary exertional level. Dkt. #5, p. 219.

The ALJ asked the VE to assume a hypothetical person of plaintiff's age, education, and work experience who is capable of performing work at the light exertional level; may not climb ladders; is limited to working in a moderate noise level environment; may have no exposure to extreme heat or cold, unprotected heights, and dangerous moving machinery; is limited to performing simple tasks; and may have occasional interaction with the public and co-workers and frequent interaction with supervisors. Dkt. #5, pp. 219-220.

The VE testified that such an individual could not perform plaintiff's past work. Dkt. #5, p. 220. However, the VE testified that such a person could perform jobs in the national economy of merchandise marker, package sorter, and order caller, which are all at the light exertional level. *Id.*

Next, the VE testified that no more than 10% off-task time would be tolerated when work is present and available for the employee. *Id.* The ALJ asked whether it would make a difference if the employee was off task for 5% of the workday in addition to regularly scheduled breaks, and the VE said it would not. Dkt. #5, pp. 220-221.

As to absenteeism, the VE stated that generally no more than one absence a month would be tolerated. Dkt. #5, p. 221. However, if the absenteeism was disability-related, the employee could request an accommodation. *Id.*

The VE also testified that his testimony was consistent with the DOT, other than the issues of off-task time and absenteeism, which are based on his experience working with employers. *Id.*

Upon examination by plaintiff's counsel, the VE testified that employers might be stricter about off-task time and absenteeism if there was a probationary period, and that absences of one day a month would likely not be tolerated during any such period. Dkt. #5, p. 222.

On June 4, 2024, the ALJ issued an unfavorable decision finding that plaintiff was not disabled. Dkt. #3, pp. 17-37. The Appeals Council denied plaintiff's request for review on September 23, 2024, Dkt. #3, pp. 5-8, and this action followed.

## DISCUSSION AND ANALYSIS

### Legal Standards

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012). Substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 496, 501 (2d Cir. 2009). If the evidence is susceptible to more than one rational interpretation, the Commissioner's determination must be upheld. *McIntyre v. Colvin*, 758 F.3d 146, 149 (2d Cir. 2014). "Where an administrative decision rests on adequate findings sustained by evidence having rational probative force, the court should not substitute its judgment for that of the Commissioner." *Yancey v. Apfel*, 145 F.3d 106, 111 (2d Cir. 1998).

To be disabled under the Social Security Act ("Act"), a claimant must establish an inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than twelve months. 20 C.F.R. § 416.905(a). The Commissioner must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. 20 C.F.R. § 416.920(a). At step one, the claimant must demonstrate that she is not engaging in substantial gainful activity. 20 C.F.R. § 416.920(b). At step two, the claimant must demonstrate that she has a severe impairment or combination of impairments that limits the claimant's ability to perform physical or mental work-related activities. 20 C.F.R.

§ 416.920(c). If the impairment meets or medically equals the criteria of a disabling impairment as set forth in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and satisfies the durational requirement, the claimant is entitled to disability benefits. 20 C.F.R. § 416.920(d). If the impairment does not meet the criteria of a disabling impairment, the Commissioner considers whether the claimant has sufficient RFC for the claimant to return to past relevant work. 20 C.F.R. § 416.920(e)-(f). If the claimant is unable to return to past relevant work, the burden of proof shifts to the Commissioner to demonstrate that the claimant could perform other jobs which exist in significant numbers in the national economy, based on claimant's age, education, and work experience. 20 C.F.R. § 416.920(g).

Here, the ALJ made the following findings with regard to the five-step sequential evaluation: (1) plaintiff has not engaged in substantial gainful activity since March 1, 2021, the alleged onset date; (2) plaintiff has the severe impairments of trigeminal neuralgia, migraine headaches, obesity, and generalized anxiety disorder; (3) plaintiff's impairments do not meet or medically equal any listed impairment; (4) plaintiff has the RFC to perform light work[2] except: she may not climb ladders; she may only be exposed to moderate noise level or less; she must have no exposure to extreme heat or extreme cold and no exposure to workplace hazards; she can only perform simple tasks;

---

[2] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, an individual must have the ability to do substantially all of these activities." 20 C.F.R. §§ 404.1567(b), 416.967(b).

she may have only occasional interaction with the public and co-workers; and she may have frequent interaction with supervisors;  (5) plaintiff is unable to perform any past relevant work; (6) considering plaintiff's age, education, work experience, and RFC, she can perform jobs in the national economy of marker, package sorter, and order caller; and (7) plaintiff was not, therefore, disabled within the meaning of the SSA from March 1, 2021, to the date of the ALJ's decision. Dkt. #5, pp. 30-43.

Pursuant to the *Revisions to Rules Regarding the Evaluation of Medical Evidence* ("*Revisions to Rules*"), 2017 WL 168819, 82 Fed. Reg. 5844, at 5867-68 (Jan. 18, 2017), applicable to claims filed on or after March 27, 2017, the Commissioner is no longer required to afford any specific evidentiary weight to medical opinions, but is obligated to consider all medical opinions and evaluate their persuasiveness based on the following five factors: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) other factors, with particular importance placed upon consistency and supportability. *Jacqueline L. v. Comm'r of Soc. Sec*, 515 F. Supp.3d 2, 7 (W.D.N.Y.  2021) (citing 20 C.F.R. § 416.920c(a) & (c)). To allow a reviewing court to trace the path of an ALJ's reasoning, an ALJ is required to explain their consideration of the supportability and consistency factors by pointing to specific evidence in the record to support the ALJ's findings regarding medical opinions. *Id.* (citing 20 C.F.R. § 416.920c(b)(2)).

With respect to supportability, the more relevant the objective medical evidence and supporting explanations presented by a medical source are to support the medical opinion, the more persuasive the medical findings will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(1))*.* Similarly, with respect to consistency, the more consistent a medical opinion is with the evidence from other medical and nonmedical sources, the more persuasive the medical opinions will be. *Id.* (citing 20 C.F.R. § 416.920c(c)(2))*.* Supportability focuses on the fit between medical opinion offered by the source and the underlying evidence presented by the source to support that opinion, while consistency focuses on how well a medical source opinion is supported by the entire record. *Rosario v. Comm'r of Soc. Sec*, 20 Civ. 7749, 2022 WL 819810, at *8 (S.D.N.Y. Mar. 18, 2022). "Even though ALJs are no longer directed to afford controlling weight to treating source opinions – no matter how well supported and consistent with the record they may be – the regulations still recognize the 'foundational nature' of the observations of treating sources, and 'consistency with those observations is a factor in determining the value of No. 2:19-cv-113, 2020 WL 3969879, at *6 (D. Vt. July 14, 2020)) (alteration in original).

### **Challenges to the ALJ's Decision**

Plaintiff makes two challenges to the ALJ's decision. She argues that: (1) the ALJ erred at step three of the sequential analysis by failing to assess plaintiff's migraine headache impairment for medical equivalency and by failing to apply applicable agency guidance in evaluating the limitations caused by her migraine headaches; and (2) the ALJ erred in assessing the opinion of a consultative medical examiner. The Court agrees.

~ 10 ~

### *The ALJ's Evaluation of Plaintiff's Migraine Headaches*

"At step three of the sequential evaluation process, an ALJ is required to analyze the claimant's medically determinable impairments to determine whether they meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart O, Appendix 1 ("the Listings")." *Ortiz v. Comm'r of Soc. Sec.*, 19-CV-0538MWP, 2020 WL 5792968, at *3 (W.D.N.Y. Sept. 29, 2020) (citation omitted). "The purpose of the [l]istings is to streamline the administrative process by identifying those impairments that are so severe they would always be disabling." *Id.* (citation and internal quotation marks omitted). "Accordingly, a claimant is entitled to a conclusive presumption that she is disabled if her impairment meets or is medically equivalent to an impairment in the listings." *Id.* (cleaned up).

"To establish medical equivalence, a claimant must demonstrate that her impairment is at least equal in severity and duration to each of the criteria of the relevant listing." *Id.*

The listings do "not include a specific listing for migraine headaches." *Kenneth H. v. Comm'r of Soc. Sec.*, 23-CV-6358-LJV, 2024 WL 5075613, at *3 (W.D.N.Y. Dec. 11, 2024). "If an impairment is not specified in the listings, the ALJ must compare the medical findings of the claimant's impairment to the criteria of closely analogous listed impairments to determine whether the findings related to [the claimant's] impairment[s] are at least of equal medical significance to those of a listed impairment." *Id.* (citation and internal quotation marks omitted).

~ 11 ~

Social Security Ruling ("SSR") 19-4p "provides that the most closely analogous listed impairment of a primary headache disorder is epilepsy (Listing 11.02)." *Id.*[3] *See also Candace D. H. v. Comm'r of Soc. Sec.*, 23-CV-147Sr, 2026 WL 873913, at *3 (W.D.N.Y. Mar. 31, 2026) ("Primary headache disorder, where headaches occur independently and are not caused by another medical condition, is not a listed impairment, but has been determined by the SSA to align most closely with listing 11.02 (Epilepsy).") (citation omitted).

Under SSR 19-4p, an ALJ must consider several factors to determine whether a primary headache disorder is medically equivalent to the criteria in Listing 11.02:

> [A] detailed description from an [acceptable medical source] of a typical headache event, including all associated phenomena (for example, premonitory symptoms, aura, duration, intensity, and accompanying symptoms); the frequency of headache events; adherence to prescribed treatment; side effects of treatment (for example, many medications used for treating a primary headache disorder can produce drowsiness, confusion, or inattention); and *limitations in functioning that may be associated with the primary headache disorder or effects of its treatment, such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects other activities, or other related needs and limitations.*

*Kenneth H.*, 2024 WL 5075613, at *3 (citing SSR 19-4p, 2019 WL 4169635, at *7).

---

[3] SSRs "are binding as precedents in adjudicating cases." *Social Sec. Ruling, SSR 19-4P; Titles II and XVI: Evaluating Cases Involving Primary Headache Disorders*, 2019 WL 4169635, at *1 (Aug. 26, 2019).

An ALJ's failure to address the medical equivalency issue at step two will not necessarily require remand if "the ALJ's reasons can be discerned from other steps in the ALJ's analysis or from evidence in the record." *Id.* "Nevertheless, the ALJ's step-three conclusion must be supported by substantial evidence and must be articulated elsewhere in the decision in a manner that permits a court to understand and review the ALJ's step-three conclusions for substantial evidence." *Ortiz*, 2020 WL 5792968, at *3 (citations and internal quotation marks omitted).

Here, although the ALJ found at step two of the sequential analysis that plaintiff's migraine headaches constituted a severe impairment, Dkt. #5, p. 31, he made no mention of them at step three. Dkt. #5, pp. 31-34. He also did not mention anywhere in his decision the above principles regarding the medical equivalency of primary headaches or the criteria under Listing 11.02. The Court thus must consider the balance of the ALJ's decision to determine "whether his analysis at step four was sufficient." *Kenneth H.*, 2024 WL 5075613, at *3. *See also Candace D. H.*, 2026 WL 87913, at *4 (reviewing ALJ's step-four analysis where ALJ failed to consider medical equivalency of plaintiff's migraines under listing 11.02 at step three).

At step four, the ALJ recounted plaintiff's hearing testimony that she had a longstanding history of migraines which had caused her to miss a good deal of work; that she had about 10-15 migraines per month which could last as along as two days; that when she gets a migraine, she needs to be in a dark room with little noise or light; that she gets massages to relieve headache-inducing tension; that she has abortive

~ 13 ~

medication that she can take when a headache begins which can make the headache last hours instead of days; and that she has tried other medications, including Botox. Dkt. #5, pp. 34-35.

The ALJ also conducted a brief review of the medical records concerning plaintiff's migraines, highlighting ones in which she reported improvement and deeming her treatments "apparently effective." Dkt. #5, pp. 35-36. In one such record in which plaintiff noted some relief with Botox, she nonetheless reported still "experiencing 5 migraines per month, with individual migraines lasting several hours but can last 1-2 days." Dkt. #6, p. 14. She also stated that the pain was 8/10 in severity, with associated symptoms of "[p]hotophobia, phonophobia, *difficulty concentrating*, [and] increased irritability." *Id.* (emphasis added). *See Randel v. Colvin*, No. 5:14-CV-1449 (GLS/CFH), 2016 WL 1223363, at *24 (N.D.N.Y. Mar. 4, 2016) ("The ALJ did not address the fact that, although medications appear to reduce plaintiff's pain from migraines, they do not appear to eliminate her migraines."), *report and recommendation adopted*, 2016 WL 1238240 (N.D.N.Y. Mar. 28, 2016).

In fashioning limitations in the RFC with respect to plaintiff's migraines, the ALJ stated that given plaintiff's ongoing complaints of migraines, "she is only able to work at the light exertional level," and he included limitations regarding noise, heat and cold, not climbing ladders, and workplace hazards. Dkt. #5, pp. 36-38.

However, as plaintiff argues, these restrictions do not address many of the limitations in functioning that may occur once a migraine headache begins, as set forth in SSR 19-4p. *See Kenneth H.*, 2024 WL 5075613, at *4 ("But the ALJ's analysis still fell short because the ALJ failed to consider 'the limitations in functioning that may be associated with the primary headache disorder . . ., such as interference with activity during the day (for example, the need for a darkened and quiet room, having to lie down without moving, a sleep disturbance that affects other activities, or other related needs and limitations.") (quoting SSR 19-4p, 2019 WL 4169635, at *7).

Indeed, Dr. Nikita Dave—whose report will be discussed further below— physically examined plaintiff on July 19, 2022, and stated that plaintiff reported that, although her headaches had decreased to about once a month, they could "last a few days with good response to oral medications." Dkt. #5, p. 971.

The Court thus agrees with plaintiff that the ALJ failed to address the issue of whether plaintiff's migraines would result in absenteeism or off-task time that, according to the VE's testimony, would be work preclusive. *See Rivers v. Kijakazi*, 21 Civ. 820 (JCM), 2022 WL 2901578, at *19 (S.D.N.Y. July 22, 2022) (holding that the ALJ's failure to analyze "the potential limiting impact" of plaintiff's migraines on her "attendance and ability to limit herself to normally scheduled breaks [ ] constitutes reversible error"); *Ortiz*, 2020 WL 5792968, at *7 ("The medical record suggests that [plaintiff's] migraines caused her to suffer severe pain for several hours at a time, undoubtedly affecting her ability to stay on task and maintain a schedule."); *Makelke v. Comm'r of Soc. Sec.*, 16-CV-977S, 2018

WL 4103179, at *4 (W.D.N.Y. Aug. 29, 2018) ("No explanation is provided for how Plaintiff's migraine condition. . .would not limit her ability to work or warrant a functional limitation in her RFC.").

Finally, the ALJ's step-four discussion contains no analysis of the criteria under Listing 11.02.[4]

"In sum, the ALJ erred at step three by not addressing migraine headaches, [and], while the ALJ purported to do that at step four, this Court still cannot conclude that the step-three error was harmless because the ALJ did not consider the limitations in functioning associated with [plaintiff's] headaches." *Kenneth H.*, 2024 WL 5075613, at *5. Remand is thus appropriate. *Id. See also Candace D. H.*, 2026 WL 873913, at *6 ("As the Court is unable to discern the rationale for the ALJ's determination that plaintiff's migraines do not equal listing 11.02, remand is required."); *Prescott v. O'Malley*, 21-CV-441 (EK), 2024 WL 1174400, at *4 (E.D.N.Y. Mar. 19, 2024) (remanding matter for further administrative proceedings where ALJ failed to consider factors applicable to migraine impairments or conduct medical equivalency analysis); *Ortiz*, 2020 WL 5792968, at *7 ("In sum, the ALJ's summary discussion of [plaintiff's] migraine condition during the remainder of the sequential evaluation does not enable me to conclude that if the ALJ

---

[4] The Commissioner states in his brief that "Plaintiff acknowledges that Listing 11.02 for epilepsy is not for headaches, but rather for seizures." Dkt. #20-1, p. 12. This is disingenuous. SSR-19-4p and the caselaw applying it "make clear that evidence of seizures is not required to establish that migraines are medically equivalent to Listing 11.02." *Ortiz*, 2020 WL 5792968, at *4. Rather, the medical equivalency analysis requires the ALJ to substitute migraines for seizures and then consider whether plaintiff's migraines are of equal medical significance under the criteria set forth in Listing 11.02. *See Crewe v. Comm'r of Soc. Sec.*, 17-CV-1309S, 2019 WL 1856260, at *4 (W.D.N.Y. April 25, 2019).

had applied the proper medical equivalency standard, he would have concluded that [plaintiff's] migraines were not medically equivalent to Listing 11.02; for this reason, remand is warranted."); *Cichocki v. Colvin*, 16-CV-0784Sr, 2018 WL 6444123, at *3 (W.D.N.Y. Dec. 10, 2018) (remanding where ALJ failed to include limitations in plaintiff's RFC resulting from plaintiff's migraines); *Makelke*, 2018 WL 4103179, at *4 (W.D.N.Y. Aug. 29, 2018) (similar).

### *The ALJ's Assessment of the Opinion of Dr. Nikita Dave*

As discussed above, Dr. Dave rendered a medical opinion after examining plaintiff in 2022. In her medical source statement, Dr. Dave opined, in part: "There may be temporary interruptions in all activities during bouts of severe headaches." Dkt. #5, p. 975.

The ALJ acknowledged this opinion and stated that he found it "persuasive," but he did not incorporate any limitation in plaintiff's RFC to accommodate such temporary interruptions, nor did he explain why. This, too, is reversible error. *See Jacob K. v. Comm'r of Soc. Sec.*, 20-CV-825-LJV, 2021 WL 4324379, at *4 (W.D.N.Y. Sept. 23, 2021) (remanding because, while ALJ was not required to accept all doctors' opinions, he was required to explain what parts of the opinions he rejected and why); *Peters v. Comm'r of Soc. Sec.*, CASE # 18-cv-00144, 2020 WL 772364, at *4 (W.D.N.Y. Feb. 13, 2020) ("Accordingly, an ALJ who chooses to adopt only portions of a medical opinion must explain his or her decision to reject the remaining portions."); *Labonte v. Berryhill*, Case # 16-CV-518-FPG, 2017 WL 1546477, at *4 (W.D.N.Y. May 1, 2027) (remanding where the

"ALJ did not explain why this portion of Dr. Bluestein's opinion was unpersuasive, and the ALJ's reasoning on this issue is not apparent from any other part of his decision.").

## CONCLUSION

Based on the foregoing, plaintiff's motion for judgment on the pleadings (Dkt. #14) is granted, and the Commissioner's motion for judgment on the pleadings (Dkt. #20) is denied. This matter is remanded to the Commissioner for further proceedings consistent with this Decision and Order.

The Clerk of Court is directed to close this case.

**SO ORDERED.**

DATED:    Buffalo, New York
          May 27, 2026

                    s/ H. Kenneth Schroeder, Jr.
                    **H. KENNETH SCHROEDER, JR.**
                    **United States Magistrate Judge**

~ 18 ~